**Fill in this information to identify your case:**

Debtor 1   Yania Castro Bustamante
First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the:   Southern District of Florida

Case number   19-24100
(if known)

## Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

**Part 1:   Explain the Repayment Terms of the Reaffirmation Agreement**

**1. Who is the creditor?**   JPMorgan Chase Bank, N.A.
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed   $8,688.34

To be paid under the reaffirmation agreement   $8,442.21

$261.70 per month for 34 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed   3.74 %

Under the reaffirmation agreement   3.74 %   ☑ Fixed rate   ☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☑ Yes.   Describe the collateral.   2015 Toyota - Corolla
2T1BURHE1FC425145

Current market value   $10,725.00 NADA

**5. Does the creditor assert that the debt is nondischargeable?**

☑ No
☐ Yes.   Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

Income and expenses reported on Schedules I and J   |   Income and expenses stated on the reaffirmation agreement

6a. Combined monthly income from line 12 of Schedule I   $3023.86   |   6e. Monthly income from all sources after payroll deductions   $3023.86

6b. Monthly expenses from line 22c of Schedule J   − $3098.65   |   6f. Monthly expenses   − $3098.65

6c. Monthly payments on all reaffirmed debts not listed on Schedule J   − $_____   |   6g. Monthly payments on all reaffirmed debts not included in monthly expenses   − $_____

6d. Scheduled net monthly income   $[74.85]   |   6h. Present net monthly income   $[74.85]

Subtract lines 6b and 6c from 6a.
If the total is less than 0, put the number in brackets.

Subtract lines 6f and 6g from 6e.
If the total is less than 0, put the number in brackets.

Debtor 1 Yania Castro Bustamante                                    Case number (if known) 19-24100
          First Name    Middle Name    Last Name

| | | |
|---|---|---|
| 7. Are the income amounts on lines 6a and 6e different? | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 8. Are the expense amounts on lines 6b and 6f different? | ☑ No<br>☐ Yes. | Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☐ No<br>☑ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>Complete line 10. |

*The job requires driving & this is a priority expense which is included in Schedule J. Debtor will budget accordingly.*

| | |
|---|---|
| 10. Debtor's certification about lines 7-9<br><br>If any answer on lines 7-9 is Yes, the debtor must sign here.<br><br>If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct.<br><br>X _____ (signature)     X _____<br>Signature of Debtor 1                    Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>    ☐ No<br>    ☑ Yes |

---

**Part 2:   Sign Here**

| | |
|---|---|
| Whoever fills out this form must sign here. | I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Cover Sheet for Reaffirmation Agreement. |

X _____ Atty                    Date 12/30/2019
Signature                                                      MM / DD / YYYY

Dennis LeVine
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☑ Creditor or Creditor's Attorney

B2400A/B ALT (Form 2400A/B ALT) (12/15)

> ☑ **Presumption of Undue Hardship**
> ☐ **No Presumption of Undue Hardship**
> (Check box as directed in Part D: Debtor's Statement
> in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT

Southern District of Florida

In re Yania Castro Bustamante

Debtor

Case No. 19-24100

Chapter 7

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and
Notice to Debtor (pages 1 - 5)

☑ Part B: Reaffirmation Agreement

☑ Part C: Certification by Debtor's Attorney

☑ Part D: Debtor's Statement in
Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

*[Note: Complete Part E only if debtor was not represented by an attorney during
the course of negotiating this agreement. Note also: If you complete Part E, you must
prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** JPMorgan Chase Bank, N.A.

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.    DISCLOSURE STATEMENT

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:*

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:        $ 8,442.21

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have
accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional
amounts which may come due after the date of this disclosure. Consult your credit agreement.*

B2400A/B ALT (Form 2400A/B ALT) (12/15)                    2

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: _____%.

*--- And/Or ---*

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 3.74 _____%.

*--- And/Or ---*

    (ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

**B2400A/B ALT (Form 2400A/B ALT) (12/15)**                                                    3

$ _____ @ _____ %;
$_____ @ _____ %;
$_____ @ _____ %.

    c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| <u>Item or Type of Item</u> | <u>Original Purchase Price or Original Amount of Loan</u> |
|---|---|
| 2015 Toyota - Corolla | $14,301.29 |
| 2T1BURHE1FC425145 | |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $ _261.70___ is due on _11/22/19_ (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: _____(number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                      4

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                    6

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:
   Motor Vehicle Year/Make/Model:
   2015 Toyota - Corolla
   2T1BURHE1FC425145

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                          Accepted by creditor:

Yania Castro Bustamante                            JPMorgan Chase Bank, N.A.

(Print Name)                                       (Printed Name of Creditor)
                                                   P.O. Box 29505 AZ1-5757
                                                   Phoenix, AZ 85038/9505
(Signature)                                        (Address) of Creditor
Date: 11/11/2019
                                                   (Signature)
                                                   Dennis Lellie 12/30/19

Co-borrower, if also reaffirming these debts:

                                                   (Printed Name and Title of Individual
(Print Name)                                       Signing for Creditor)


(Signature)                                        Date of creditor acceptance:

Date: _____                              _____

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                    7

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: *Ricardo Corona (America Alvarez on behalf)*

Signature of Debtor's Attorney: *America Alvarez (#0716050) for Ricardo Corona*

Date: *11/11/2019*

B2400A/B ALT (Form 2400A/B ALT) (12/15)                                                    **8**

### PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, __OR__, if the creditor is a Credit Union and
the debtor is represented by an attorney, read section 3. Sign the appropriate
signature line(s) and date your signature. If you complete sections 1 and 2
__and__ your income less monthly expenses does not leave enough to make the
payments under this reaffirmation agreement, check the box at the top of page
1 indicating "Presumption of Undue Hardship." Otherwise, check the box at
the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my
dependents or me. I can afford to make the payments on the reaffirmed debt because my
monthly income (take home pay plus any other income received) is $ *30 23 80* and my actual
current monthly expenses including monthly payments on post-bankruptcy debt and other
reaffirmation agreements total $ *28 36.95* leaving $ *186. 85* to make the required payments
on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to
make the payments, this reaffirmation agreement is presumed to be an undue hardship on me
and must be reviewed by the court. However, this presumption may be overcome if I explain
to the satisfaction of the court how I can afford to make the payments here: *I need the
vehicle because my job requires driving to reach clients, I shall
budget accordingly, and m this expense is included in*
(Use an additional page if needed for a full explanation.) *Schedule J*
*I am only short about $74.00 monthly and my other expenses can vary.*

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a
completed and signed reaffirmation agreement.

Signed: X _____
     (Debtor)

     _____
     (Joint Debtor, if any)

Date: ___11/11/19___

                *— Or —*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to
make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure
Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
     (Debtor)

     _____
     (Joint Debtor, if any)

Date: _____



**CHASE**

## PROMISSORY NOTE AND SECURITY AGREEMENT

| Note Date: | 08/22/2017 | | |
|---|---|---|---|
| **Borrower Name:** | YANIA CASTRO BUSTAMANTE | **Borrower Name:** | N/A |
| **Address:**<br>11715 SW 18TH ST<br>APT 206<br>MIAMI, FL 33175 | | **Address:**<br>N/A | |

**Lender:** JPMorgan Chase Bank, N.A., Auto Finance Division, 1111 Polaris Parkway, Columbus OH 43240

Each person ("you") who signs this Promissory Note and Security Agreement ("Agreement") is equally responsible to JPMorgan Chase Bank, N.A. (also referred to as "Chase", "we" and "our") for all obligations under this Agreement, including repaying the amounts below.

### DESCRIPTION OF VEHICLE SECURING THIS LOAN ("Vehicle"):

2015 TOYOTA Corolla Sedan 4D LE I4 (2T1BURHE1FC425145)

| "e" means an estimate | FEDERAL TRUTH-IN-LENDING DISCLOSURES: | | |
|---|---|---|---|
| **ANNUAL PERCENTAGE RATE**<br>The cost of your credit as a yearly rate. | **FINANCE CHARGE**<br>The dollar amount the credit will cost you. | **AMOUNT FINANCED**<br>The amount of credit provided to you or on your behalf. | **TOTAL OF PAYMENTS**<br>The amount you will have paid after you have made all payments as scheduled. |
| 3.74% | $1,400.71 e | $14,301.29 e | $15,702.00 e |

**PAYMENT SCHEDULE:** You promise to pay us 59 equal payments of $261.70 due on the same date of each month starting on Sep 21, 2017 and one final payment of $261.70 due on Aug 21, 2022.

**ANNUAL PERCENTAGE RATE (APR) MAY INCREASE.** Your APR includes a 0.25% rate discount for signing up (under a separate document) to have your loan payments automatically deducted from a Chase deposit account. The APR above will stay the same as long as you continue automatic payment deductions from a Chase deposit account. If you stop the automatic payment deductions, we may increase the APR by 0.25%. If that occurs, you will continue to make your regularly scheduled payment amount but your final payment will be larger. As an example, if you borrowed $20,000 for 60 months, at an APR of 7.25%, you would be making 60 payments of $398.39. If you stopped making automatic payments after the first payment, the APR would increase to 7.50% and you would continue to make monthly payments of $398.39, but the increased rate would mean more interest would accrue and your final payment would be $564.39. Your actual loan amount, APR and term would determine how much your final payment would increase.

**PREPAYMENT:** You will not have to pay a penalty if you pay off this loan early.

**SECURITY:** You are giving us a security interest in the Vehicle including any accessories, equipment and replacement parts installed in or on the Vehicle, as further described in this Agreement.

**LIEN FILING FEE:** $0.00

**LATE FEE:** If a payment is more than 10 days late, you will be charged the greater of 5% of the unpaid portion of the amount due or $25.00.

**OTHER TERMS:** You should read this Agreement in full for additional information, including our security interest in the Vehicle, nonpayment, default, prepayment penalties, and our right to require repayment in full before the scheduled date.

**ADDITIONAL AMOUNTS:** The amount you borrowed from us was determined from information given to us by you, or by people directed by you (such as your dealer or a prior lender). If the amounts are not accurate (for example, if a loan payoff amount is no longer valid or you fail to pay amounts necessary to perfect our first priority lien on title to the Vehicle), we may ask that you pay those additional amounts and if you don't, we may add those amounts to your loan balance and accrue interest at the APR. If that occurs, your minimum monthly payment won't change, but your final payment will be larger.

Page 1 of 5

© 2017 JPMorgan Chase Bank, N.A. Member FDIC. All rights reserved.<br>PNMU042017

Bank Copy<br>081817 05:18

## ITEMIZATION OF AMOUNT FINANCED

| | | | |
|---|---|---|---:|
| (a) | Amount Given to You Directly | $ | 0.00 |
| (b) | Fees and Taxes Paid to Governmental Agencies | $ | 125.15 |
| (c) | To: SOUTHEAST TOYOTA FINANCE for payoff to existing creditor | $ | 14,176.14 |
| (d) | To: N/A | $ | 0.00 |
| (e) | To: N/A | $ | 0.00 |
| | **Amount Financed** | $ | 14,301.29 |

[ X ] If this box is checked, a Florida documentary stamp tax required by law in the amount of $50.40 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. 78-8013462047-4.

(MILITARY LENDING ACT NOTICE FOR REFINANCED AUTO LOANS: Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). If you are covered by the Military Lending Act, (i) then you are not bound by the Arbitration Clause below, and (ii) notwithstanding anything to the contrary in this Agreement, to the extent required by the Military Lending Act, nothing in this agreement will be deemed a waiver of the right to legal recourse under any otherwise applicable provision of state or federal law. To receive this information and a description of your payment obligation verbally or for questions, please call (800) 235-9978.)

## INFORMATION ABOUT YOUR LOAN

**GOVERNING LAW:** This Agreement is governed by federal law and the laws of the State of Ohio. If any provision of this Agreement is found to conflict with applicable law, it will be considered to be modified to comply with that law and the remaining provisions of this Agreement shall continue.

**YOUR REPAYMENT PROMISE:** You promise to pay us in installments as shown above, the Amount Financed plus the Finance Charge determined by applying a daily rate of 1/365th (1/366th in a leap year) of the APR to the unpaid balance each day. The loan is made when we receive a fully signed Agreement and related documents and disburse the proceeds of the loan. The Finance Charge will start to accrue on the later of the date we disburse the proceeds of this loan or the Note Date above.

**SIMPLE INTEREST LOAN:** This is a simple interest loan, which means we compute interest each day at the APR shown above on the unpaid balance. Making payments early means you will owe less Finance Charge over the term of the loan, while making payments later means you will owe more. Before your last payment is due, we will tell you about any additional amount you owe us (if it is $1.00 or more). After your last payment, we will refund any amount we owe you (if $1.00 or more).

**HOW WE APPLY PAYMENTS TO YOUR LOAN BALANCE:** For each payment made, we apply the money to interest that has accrued since your last payment and then to the unpaid balance. If you make payments that are more than your regular monthly payment, we apply the extra amount to any fees owed and then, if any amount remains, to your unpaid balance. In addition, any amounts received by us, including amounts or refunds of optional products you purchased or insurance proceeds, will be credited to your loan or returned to you.

## GRANT OF SECURITY INTEREST AND OBLIGATIONS REGARDING THE VEHICLE

**SECURITY INTEREST:** You grant us a security interest in the Vehicle, any proceeds of the Vehicle, and any accessories, equipment and replacement parts installed in the Vehicle. You will not allow any subordinate or other liens to be placed on the Vehicle. The security interest also covers other products financed in this Agreement, proceeds of those products, and any insurance proceeds. The security interest secures payment of all amounts you owe under this Agreement and in any transfer, renewal, extension, refinancing, modification, or assignment of this Agreement. It also secures your other obligations in this Agreement. We may assist you in doing so, but it is your responsibility to ensure our lien is noted on the title to the Vehicle.

**VEHICLE CARE AND RESPONSIBILITY, RISK OF LOSS:** You bear the risk of loss of the Vehicle, which means you must repay us all amounts under this Agreement even if the Vehicle is damaged, destroyed or missing, whether or not it is insured. If you are in an accident or your car is stolen and the amount of your insurance proceeds doesn't pay your loan in full, you will still be required to pay the remaining amount owed on this loan. You will not allow anyone else to possess the Vehicle or allow it to be removed from the United States without us giving you prior written permission to do so (which we do not have to give). You will keep the Vehicle in good condition and allow us to inspect it if we ask. You will not allow anyone else to claim an interest in the Vehicle through seizure, a lien, or by any other means. You promise that only licensed operators will operate the Vehicle and you will keep it at the address stated above or will tell us if you move or want to keep it in a different location. If we pay fees, taxes or amounts to third parties to pay off prior loans

Page 2 of 5

© 2017 JPMorgan Chase Bank, N.A. Member FDIC. All rights reserved.
PNMU042017

Bank Copy
081817 05:18

or to allow our lien to be perfected, or any other amounts to protect our interest in the Vehicle, you will pay us those amounts when we ask or, we may add the amounts to your loan balance, which will accrue interest at the APR. If that occurs, you will continue to make your regularly scheduled payment amount but your final payment will be larger.

**VEHICLE TITLE/REGISTRATION:** You agree to: (1) promptly title and register the Vehicle in your name(s) and list us as lienholder; and (2) pay applicable taxes and fees incurred in connection with purchasing and owning the Vehicle, including sales tax.

**INSURANCE REQUIREMENTS:** You agree to insure the Vehicle, through a policy you already have or a new policy, from an insurance company that you choose who is authorized to sell the insurance, provided the company and policy is reasonably acceptable to us. We will notify you if it is not. Who you choose will not affect our credit decision, except that we may impose reasonable requirements concerning the credit worthiness of the insurer and type of coverage you chose. You must insure the Vehicle with a policy which has a maximum $1,000 deductible covering comprehensive fire, theft and collision coverage, in an amount sufficient to cover the replacement value. You will name us the loss payee of any insurance policy and if we ask, give us written evidence that you have obtained the required insurance. We have the right to receive any insurance settlement and apply it to repair the Vehicle or to your unpaid balance, at our option or if we receive any charges returned for your insurance, we may credit the amount to your unpaid balance or return it to you if the loan has been paid in full. We also have the right to make a claim under your policy or cancel the policy if you are in default under this Agreement.

## IN THE EVENT OF DEFAULT

**DEFAULT:** If allowed by law, you are in default under this Agreement if: (1) you don't make any payment when it is due or don't pay us any other amounts you owe under this Agreement; (2) you break any of the obligations in the Agreement; (3) you die; (4) anyone tries to take the Vehicle by legal proceedings; (5) you made any materially false statements when you applied for the loan given under this Agreement; (6) you don't keep the Vehicle insured; (7) the Vehicle is stolen and not recovered, destroyed, seized or confiscated; (8) you assign this Agreement to someone else, without getting our approval in writing first; (9) you don't get title to the Vehicle and have it put in your name; (10) you materially change the Vehicle, rent it or use it to carry passengers or goods for hire or any unlawful purpose; or (11) you don't get our lien noted on the title as a first priority lien, or don't cooperate in making sure that happens.

If you default, you may have the right under law to cure the default. If there is no right to cure or you fail to cure within the time provided, then we can do any of the following: (a) take possession of the Vehicle, with or without legal process; (b) demand that you pay all you owe on this Agreement at once, which may be subject to interest at the APR until you pay such amount; (c) take any reasonable action to prevent loss by us; and (d) exercise any other legal or equitable remedy available to us.

**POSSESSION OF THE VEHICLE UPON DEFAULT:** Upon possession, you authorize us to use your Vehicle license plates to move it. Any accessories, equipment or replacement parts, whether on the Vehicle as of the date of this Agreement or added after, will remain with the Vehicle. Any personal items found in the Vehicle at the time of repossession may be held at a storage facility and, as permitted by law, you may have to pay the storage facility a reasonable fee to reclaim them. If not timely retrieved, the items may be disposed of as permitted by law. **NOTICE: THE VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.**

**SALE OF THE VEHICLE AFTER DEFAULT:** If we get possession of your Vehicle after default, we will sell the Vehicle in accordance with applicable law and will notify you at least 10 days before the sale. The notice will also tell you how to get the Vehicle back (redeem it). We will sell the Vehicle if you don't redeem it by the sale date in the notice. Unless an alternative method is required by applicable law, we will use the gross proceeds from the sale of the Vehicle, minus, to the extent permitted by law, any (1) charges for possessing the Vehicle (including payment of liens, taxes, or other fees related to the Vehicle); (2) charges for storing, cleaning, advertising and selling the Vehicle; (3) reasonable attorney's fees, and court costs related to the possession; and (4) other charges permitted by law, and apply the remaining amount to the loan balance. If you owe less than that amount, we will give you the difference unless someone else has an interest in the Vehicle or is otherwise entitled to those proceeds by applicable law. If you owe more than the amount remaining after the sale, you will pay us the remaining amount as allowed by law. If you do not pay the difference when asked, interest may accrue daily on this amount at the APR until paid.

**ATTORNEY'S FEES:** If allowed by law, if you default and we hire an attorney who is not our salaried employee to enforce this Agreement, you will pay our actual and reasonable attorneys' fees, and any court costs.

**RETURNED PAYMENT FEE:** If your payment is returned for any reason, we may charge you a Returned Payment Fee of $25.

## IMPORTANT LEGAL NOTICES

**NO WAIVER OF RIGHTS:** If we choose to not enforce our rights, or delay enforcing any of our rights, we can still enforce those rights and are not waiving any rights. For example, if we don't charge a late fee for a late payment, we will have the right to charge a late fee on any subsequent late payment and have not waived that right.

Page 3 of 5

© 2017 JPMorgan Chase Bank, N.A. Member FDIC. All rights reserved.
PNMU042017

Bank Copy
081817 05:18

**USE OF AUTOMATED TELEPHONE DIALING EQUIPMENT AND TEXT MESSAGES:** When you give us your mobile phone number, we have your permission to contact you at that number about all your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences.

**CREDIT REPORT:** By submitting your application, you gave us permission to obtain a consumer credit report from one or more consumer credit reporting agencies. You also agree that we can obtain additional credit reports and other information about you in connection with updates, renewals, extensions, account review, collections activity or for other legitimate purposes.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT AGREEMENT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**AGREEMENT TO ARBITRATE DISPUTES**
**The following Arbitration Agreement can significantly affect your rights in any dispute with us. Please read it carefully before signing this Agreement.**

You and we agree that upon the election of either of us, any claims or disputes relating in any way to your Agreement, financing account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court). This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputes are referred to in this agreement as "Claims." However, claims relating to the scope, enforceability or validity of this agreement to arbitrate are for a court of competent jurisdiction to decide. The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis. Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the Vehicle, to recover a deficiency balance, or for individual injunctive relief. Arbitration procedures are generally simpler than court rules, and discovery can be more limited. Certain rights that you have in court may not be available in arbitration.

YOU AND WE AGREE NOT TO: 1) SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING; 2) SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE; 3) BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR 4) SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

If these terms relating to class or representative procedures are legally unenforceable for any reason with respect to a Claim, then this agreement to arbitrate will be inapplicable to that Claim, and the Claim will instead be handled through litigation in court rather than by arbitration. No arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The single arbitrator will conduct the arbitration and decide the Claim in accordance with all applicable substantive law, including recognized principles of equity and statutes of limitations, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. The arbitrator can award damages or other relief provided for by law to you or us, but not to anyone else. The arbitrator's authority is limited to the Claims between you and us

A party can file a written appeal to the arbitration administrator within 30 days of award issuance. The appeal must request a new

---

© 2017 JPMorgan Chase Bank, N.A. Member FDIC. All rights reserved.
PNMU042017

arbitration in front of three neutral arbitrators designated by the same arbitration administrators. The panel will reconsider all factual and legal issues, following the same rules of procedure, and will make decisions based on majority vote. Any arbitration decision and award will be final and binding on the named parties and enforceable by any court having jurisdiction.

We will pay any costs that are required to be paid by us under the arbitration administrator's rules of procedure. Even if not otherwise required, we will reimburse you up to $500 for any initial arbitration filing fees you have paid. We will also pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you win the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. All other fees will be allocated according to the arbitration administrator's rules and applicable law

Rules and forms may be obtained from, and Claims may be filed with JAMS (800.352.5267 or jamsadr.com) or the AAA (800.778.7879 or www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

**NEGATIVE CREDIT REPORTING NOTICE:**
**We may report information about your account to credit reporting agencies. Late payments, missed payments or other defaults on your account may be reflected in your credit report.**

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.**

**NOTICE TO CONSUMER: 1. Do not sign this Agreement before you read it. 2. You are entitled to a copy of this Agreement. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

**IMPORTANT: READ BEFORE SIGNING. YOU SHOULD READ THIS AGREEMENT CAREFULLY. THIS WRITTEN AGREEMENT IS THE ONLY ENFORCEABLE DOCUMENT AND NO OTHER TERMS OR VERBAL PROMISES CAN BE ENFORCED. YOU CAN ONLY CHANGE THE TERMS OF THIS AGREEMENT THROUGH ANOTHER WRITTEN AGREEMENT SIGNED BY YOU AND US AND THIS DOCUMENT IS THE FINAL AGREEMENT BETWEEN YOU AND US AND NO ORAL PROMISES THAT CONFLICT WITH THIS AGREEMENT WILL BE ENFORCEABLE. HOWEVER, IF WE PROVIDE YOU NOTICE, WE CAN MAKE CHANGES THAT ARE AT LEAST AS FAVORABLE TO YOU.**

**YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETED COPY OF THIS AGREEMENT, YOU HAVE READ IT AND UNDERSTAND IT AND AGREE TO BE RESPONSIBLE FOR REPAYING THIS DEBT UNDER THESE TERMS.**

**YOU ACKNOWLEDGE AND AGREE THAT NO DEBT CANCELLATION, GUARANTEED AUTO PROTECTION ("GAP"), CREDIT INSURANCE, OR SIMILAR PRODUCTS, OR ANY OTHER OPTIONAL PRODUCTS OR SERVICES WHICH WE HAVE NOTIFIED YOU ARE PROHIBITED IN CONNECTION WITH THIS LOAN, WERE SOLD TO YOU IN CONNECTION WITH THE SALE OF THE VEHICLE SECURING THIS AGREEMENT, AND THAT YOU HAVE NOT PAID FOR ANY SUCH PRODUCTS IN CASH OR WITH FUNDS OBTAINED FROM US UNDER THIS AGREEMENT.**

YANIA CASTRO BUSTAMANTE 's Signature

© 2017 JPMorgan Chase Bank, N.A. Member FDIC. All rights reserved.
PNMU042017



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827
www.dealertrack.com

# JPMorgan Chase Bank, N.A.

## Lien and Title Information

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | 0217320415 |
| **Lienholder** | JPMORGAN CHASE BANK, N.A. |
| **Lienholder Address** | P.O. BOX 901033 |
| | FT WORTH, TX 761012033 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 2T1BURHE1FC425145 | **Issuance Date** | 1/5/2018 |
| **Title Number** | 0119295314 | **Received Date** | 1/11/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2015 | **Odometer Reading** | |
| **Make** | TOYT | **Branding** | |
| **Model** | | | |
| **Owner 1** | YANIA CASTRO BUSTAMANTE | | |
| **Owner 2** | | | |
| **Owner Address** | 11715 SW 18TH ST APT 206 | | |
| | MIAMI, FL 33175 | | |

**Printed:** Friday, November 08, 2019 1:37:02 AM PST

11/8/2019

**NADA** Used Cars/Trucks

## Vehicle Information

| | |
|---|---|
| Vehicle: | **2015 Toyota Corolla Sedan 4D LE 1.8L I4** |
| Region: | **Southeastern** |
| Period: | **November 8, 2019** |
| VIN: | **2T1BURHE1FC425145** |
| Mileage: | **67,500** |
| Base MSRP: | **$18,515** |
| Typically Equipped MSRP: | **$19,400** |
| Weight: | **2,855** |

## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | $6,425 | -$24 | N/A | **$6,401** |
| Average | $8,150 | -$24 | N/A | **$8,126** |
| High | $9,900 | -$24 | N/A | **$9,876** |
| Trade-In | | | | |
| Rough | $6,875 | N/A | N/A | **$6,875** |
| Average | $7,875 | N/A | N/A | **$7,875** |
| Clean | $8,675 | N/A | N/A | **$8,675** |
| | | | | |
| Clean Loan | $7,825 | N/A | N/A | **$7,825** |
| Clean Retail | $10,725 | N/A | N/A | **$10,725** |

*The auction values displayed include typical equipment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power.
©2019 J.D.Power

```
CTL2 001   CTL3 000   CTL4 0000   ACCT        3580      EFF DATE           10/21/19
CTL2 001   CTL3 000   CTL4 0000   CUST                  ACTIVE ACCOUNT
                                                        SIMPLE INT - FIXED RATE
PAYOFF              8688.34   ******** RATES *********   AUTO DR                  Y
ORIG LOAN AMT      14301.29   CURR RATE     3.7400000    PROD TYPE             BRF1
ORIG PROCEEDS      14176.14   ORIG RATE     3.7400000    PRIM OFFICER
LT CHG DUE             0.00   PER DIEM      0.8876198    GL KEY 01   001   3496 0
FEES DUE               0.00   ********* DATES ********   CALL CODE             06B0
CURRENT PRIN        8662.60   CONTRACT DATE   08/23/17   ***** REPAYMENTS *****
CURRENT INT           25.74   CURR MATURITY   08/22/22   CURR TERM               60
***************************   CLOSED DATE                PYMTS MADE              25
REG PYMT AMT         261.70   NEXT DUE DATE   10/22/19   PYMTS REM               35
NEXT DUE AMT         261.70   PAST DUE DATE   10/22/19   MONTHS EXTD 000    REN N
PAST DUE AMT           0.00   LAST MAINT DT   09/09/19   YTD INT COLL        275.67
***************************   LST BAL CHG DT  09/22/19   INT COL PREV        456.38
YANIA CASTRO BUSTAMANTE                                  ***** CREDIT HIST *****
11715 SW 18TH ST APT 206                                 010 030 060 090 120 150
                                       COLLATERAL        000 000 000 000 000 000
MIAMI                       FL 33175-1692 CODE: AU
                                DESC: 2015 TOYOTA             COROLLA
  PF3-ADDL INFO   PF9-CUST INFO   PF10-ENDORSER INFO
```

```
CTL2 001   CTL3 000   CTL4 0000   ACCT          3580    EFF DATE        11/08/19
CTL2 001   CTL3 000   CTL4 0000   CUST                  LEGAL STAT = L
                                                        SIMPLE INT - FIXED RATE
PAYOFF              8442.21    ******** RATES ********  AUTO DR              N
ORIG LOAN AMT      14301.29    CURR RATE    3.7400000   PROD TYPE         BRF1
ORIG PROCEEDS      14176.14    ORIG RATE    3.7400000   PRIM OFFICER
LT CHG DUE             0.00    PER DIEM     0.8635332   GL KEY 01   001  3496 0
FEES DUE              0.00    ******** DATES ********  CALL CODE          06B0
CURRENT PRIN        8427.53    CONTRACT DATE  08/23/17  ***** REPAYMENTS *****
CURRENT INT           14.68    CURR MATURITY  08/22/22  CURR TERM            60
*****************************   CLOSED DATE             PYMTS MADE           26
REG PYMT AMT         261.70    NEXT DUE DATE  11/22/19  PYMTS REM            34
NEXT DUE AMT         261.70    PAST DUE DATE  11/22/19  MONTHS EXTD 000  REN N
PAST DUE AMT           0.00    LAST MAINT DT  10/24/19  YTD INT COLL     302.30
*****************************   LST BAL CHG DT 10/22/19  INT COL PREV     456.38
                                                        ***** CREDIT HIST *****
YANIA CASTRO BUSTAMANTE                                 010 030 060 090 120 150
11715 SW 18TH ST APT 206                                000 000 000 000 000 000

MIAMI                    FL 33175-1692 CODE: AU
                              DESC: 2015 TOYOTA              COROLLA
PF3-ADDL INFO   PF9-CUST INFO   PF10-ENDORSER INFO
```